1  WARD L. BENSHOOF (State Bar No. 054987)
   ANDREA S. WARREN (State Bar No. 287781)
2  **Alston & Bird LLP**
   333 South Hope Street, 16th Floor
3  Los Angeles, CA 90071-1410
   Telephone: (213) 576-1000
4  Facsimile: (213) 576-1100
   Emails:    ward.benshoof@alston.com
5             andrea.warren@alston.com

6  Attorneys for Plaintiff INGRID CASTILLO

7

8                UNITED STATES DISTRICT COURT

9              CENTRAL DISTRICT OF CALIFORNIA

10

11                                       Case No:    2:13-CV-00504-MRW
   INGRID CASTILLO,
12                                       **JOINT STATUS REPORT**
   Plaintiff,
13
   vs.
14                                       Honorable Michael R. Wilner
   CACH, LLC; NELSON & KENNARD;
15 GYTANA CASTRO; and DOES 1 through
   10, inclusive,
16
17 Defendants
18
19
20
21
22
23
24
25
26
27
28

                           JOINT STATUS REPORT
   LEGAL02/34273698v2

# JOINT REPORT

The Parties file this Joint Report Pursuant to this Court's Minute Order of July 5, 2013.

## I.   NELSON & KENNARD'S PRODUCTION OF RECORDINGS

As discussed during the parties' telephone conference with the Court, on July 3, 2013, Nelson & Kennard mailed to counsel for Plaintiff a disc containing recordings of telephone conversations with Plaintiff.

That disc arrived at Plaintiff's office on July 8, 2013 containing 85 MP3 files. As reflected on Exhibit A hereto, each file name included the date of the recording. When Plaintiff's counsel viewed the disc, it was apparent from the dates of the files that a 12 month gap existed in what had been produced.   Specifically, while Defendants' communications with Plaintiff had commenced on July 10, 2010, the earliest recording produced by Nelson & Kennard was dated a year later:   July 12, 2011.

Plaintiff's counsel promptly asked for a further discovery conference with counsel for Defendants to discuss why 12 month's worth of recordings had not been produced.

After some time to get in touch with his client, counsel for Nelson & Kennard ultimately communicated to Plaintiff's counsel that what had been produced was what had existed on his client's "main system" and that earlier recordings had apparently been archived.   Counsel further stated that retrieving the earlier recordings from Nelson & Kennard's "back up system", which required 40 to 50 hours of work, was being pursued diligently by his client.   Counsel did not know why the back up system had not been examined earlier.

In discussions with Plaintiff, counsel for Nelson & Kennard has stated it would take "2 to 3 weeks" before a complete set of recordings would be recovered and

1

LEGAL02/34273698v2

1  produced.

2

3  **II.    PLAINTIFF'S 30(b)(6) DEPOSITION NOTICES**

4        In view of the fact that a complete set of recordings is still not available,

5  Plaintiff agreed to take all of her 30(b)(6) Deposition Notices off calendar.

6

7  **III.   JULY 15TH PRODUCTION OF DOCUMENTS**

8        On July 15, 2013, Defendants produced the following documents to Plaintiff's

9  counsel's office via e-mail:

10       **A.    Production by CACH, LLC**

11       Counsel for CACH produced:

12           • A single page document styled "Default Judgment by Clerk", filed

13             and entered in Los Angeles County Superior Court Case Number

14             10K18240 on 3/01/12.

15           • 74 pages of what counsel described as "notelines" and which

16             counsel stated had been "redacted".

17       In examining CACH's production, Plaintiff's counsel promptly communicated

18  by e-mail with CACH's counsel with the following requests:

19           "When material is redacted from a document, could you please indicate

20           somehow on the document where that has occurred, as we did with

21           redactions made in Plaintiff's Initial Disclosures?     None of the

22           documents produced have any such indication.     Rather, as the

23           chronological order skips around, it looks like cut and pasting, or other

24           re-arranging of the documents, has occurred.     Could you please re-

25           produce the documents as originally maintained with some kind of

26           "Redaction" mark when particular material has been not produced?"

27

28

JOINT STATUS REPORT

LEGAL02/34273698v2

"Also, I had thought from our discussions that CACH would be producing whatever the debt information was that was transmitted to N&K. Will that be forthcoming today?"

CACH's counsel responded:

"I will see what I can do about the redaction issue although that cannot be accomplished today. With regard to the debt information, I am confirming with David exactly what was received by N&K and I will get back to you shortly."

Plaintiff has not received a further response from CACH, although on the issue of debt information, counsel for CACH had earlier advised Plaintiff of his understanding that the debt alleged was not a consumer loan, as Plaintiff's counsel had assumed, but rather was an unpaid credit card debt.

Later on July 15th, counsel for Nelson & Kennard produced to Plaintiff the information regarding this debt that it had received from CACH: electronic data stating the identity of the alleged debtors, and "Miscellaneous Information" which included the dates the account was opened and closed; a "Chg Off Balance" of "4369.99"; and the identity of the "Original Creditor", "Wells Fargo Bank NA".

**B.    Production by Nelson & Kennard and Castro**

Counsel for Nelson & Kennard and Castro produced:

- A 60 pages of document marked "Confidential", bearing the notation on the first page in handwriting of "Castillo Account Notes" with information on several places blacked out. As to this document, Defendants' counsel stated: "The account notes have been redacted on the grounds of attorney-client privilege and work product. The private information of the co-obligor of the debt has been redacted where necessary".

- A 51 page document described as "training materials". As to this document, Defendants' counsel stated: "The training materials

have been redacted for relevance."

- 30 pages of documents identified as "State Court Pleadings"; and

- A 2 page Declaration of Insurance.

On the morning of July 16th, after reviewing this document production, and with particular reference to frequent redactions to the account notes made on the basis of "attorney-client privilege and work product", Plaintiff's counsel e-mailed a request to Defendants' counsel pursuant to Federal Rule of Civil Procedure 26(b)(5)(A) for information sufficient for Plaintiff to both understand the basis for the assertion of privilege and, if appropriate, challenge that assertion. *See* Exhibit B.   Plaintiff also requested that counsel confirm that the documents received constituted the entirety of the evidence by Nelson & Kennard from CACH of the alleged debt owed by Plaintiff. *Id.*

Plaintiff has not yet received a response to this request.

**C.   Supplemental Production by Plaintiff**

On July 15th, Plaintiff supplemented her Initial Disclosures by producing to Defendants an additional 100 pages of Plaintiff's medical records recently obtained by Plaintiff's counsel.

## IV.   OTHER DISCOVERY MATTERS

On May 31, 3013, Plaintiff propounded both form Interrogatories and Requests for Documents on all Defendants.

The parties have unresolved issues with respect to this discovery, including assertions of privilege and lack of relevancy by Defendants, but have agreed to defer further meeting and conferring on those issues pending production by Nelson & Kennard of a full record of relevant telephone recordings.

JOINT STATUS REPORT

LEGAL02/34273698v2

## V. PLAINTIFF'S REQUEST FOR LEAVE TO FILE A FIRST AMENDED COMPLAINT

For the reasons described in Plaintiff's Separate Statement below, on July 17, 2013, Plaintiff requested of Defendants their Stipulation that Plaintiff be granted leave to file a First Amended Complaint.   A copy of the proposed First Amended Complaint provided to counsel for Defendants along with this request is attached hereto as Exhibit C.   (Plaintiff's also provided counsel a "red line" version to compare the changes made to the Original Complaint).

Defendants object  to the filing of the proposed First Amended Complaint on the grounds that the filing would be futile since the new issues raised by the proposed First Amended Complaint are barred as a matter of law or are contrary to law.

Plaintiff disputes that conclusion and will bring on its Motion for Leave by regularly noticed Motion.

## VI. PLAINTIFF'S SEPARATE STATEMENT

### A.   Basis for Request For Leave to Amend

The information provided to Plaintiff's counsel by Defendants concerning: (1) the nature of the alleged indebtedness at issue in this matter; (2) the lack of any actual evidence of that indebtedness in either the possession of CACH or Nelson & Kennard; (3) Defendants actions nevertheless to commence collection against the Plaintiff; (4) the manner in which Plaintiff now believes Defendants calculated to mislead and abuse; and (5) the fact that this is apparently how Defendants have been conducting their debt collection business in California, and elsewhere, for some time, was all not only new to Plaintiff, but was at odds with assumptions Plaintiff's counsel had made in originally pleading this case.

These assumptions included a belief by Plaintiff's counsel – now shown to have been entirely unfounded – that neither CACH nor Nelson & Kennard would have

JOINT STATUS REPORT

LEGAL02/34273698v2

1 | commenced the proceedings which they did, nor would have filed the court action

2 | which they did against Plaintiff, without taking the minimal steps required by law to

3 | verify and substantiate that the allegations which they made had basic evidentiary

4 | support, and were therefor legally justified.

5 |      In acting as they did, Plaintiff believes that Defendant's conduct, as disclosed in

6 | the meet and confer discussions conducted amongst counsel since July 8th and the July

7 | 15th document production constitutes an unlawful, unfair, and/or fraudulent business

8 | practice actionable pursuant to Section 17200 of the California Business &

9 | Professions Code, which was also unknown to Plaintiff before.

10 |      Plaintiff seeks leave to add this recently discovered cause of action to her

11 | Complaint.

12 |      In its Statement below, CACH asserts that the new unfair business practice

13 | allegations of the proposed First Amended Complaint are barred by the Rooker-

14 | Feldman doctrine.   Plaintiff disagrees.

15 |      Prior to this Joint Report being finalized, Plaintiff's counsel brought to CACH's

16 | attention the controlling 9th Circuit authority of *Kougasian v. TMSL Inc,* 393 F.3d

17 | 1136 (9th Cir. 2004) and the fact that nowhere in the amended allegations does

18 | Plaintiff seek to set the state court default judgment aside.   In *Kougasian,* the 9th

19 | Circuit very clearly held that the Rooker-Feldman doctrine does not apply to claims

20 | asserting that a state court judgment was procured by extrinsic fraud: i.e. the submittal

21 | of false declarations.   Here, Plaintiff seeks to allege that the collection proceedings

22 | were commenced, and the state court default judgment ultimately procured, through

23 | Defendants' unfair business practices.   There is no difference.

24 |      Moreover, unlike in *Kougasian,* Plaintiff's proposed First Amended Complaint

25 | does not ask that the state court judgment be set aside.   Yet, even in such

26 | circumstances the Ninth Circuit in *Kougasian* held that Rooker-Feldman is still not

27 | implicated unless the Plaintiff seeks to set aside the state court judgment based upon

28 | <u>error of the court</u> – not "a wrongful act" committed by one of the parties.   Here,

1   Plaintiff seeks leave to allege unlawful, unfair, and/or fraudulent conduct by CACH

2   and Nelson & Kennard in procuring the state court judgment, and in deceiving the

3   court by their filings.  Plaintiff's proposed First Amended Complaint does not allege

4   any error by the court.  Based upon the false affirmations by Defendants, the court

5   acted as it should have.

6        Nelson & Kennard states that the proposed First Amended Complaint would be

7   futile, relying upon both the *Rooker-Feldman* doctrine, as well as authority which

8   N&K asserts holds that "improperly filed suit without sufficient evidence does not

9   support a FDCPA claim" or a Rosenthal Act claim.   While Plaintiff believes that

10  authority inapposite, to eliminate any debate over the matter, Plaintiff has revised its

11  proposed Amendment to eliminate any amendment to the FDCPA or Rosenthal Act

12  claims.  That version, revised to accommodate the Nelson & Kennard arguments, is

13  the version attached hereto as Exhibit C.

14

15       **B.    The Nelson & Kennard Recordings**

16       Plaintiff believes it should have been obvious to anyone looking at the dates of

17  the files which Nelson & Kennard produced on July 8th that the recordings did not

18  fully reflect the entirety of the telephone conversations between Defendants and

19  Plaintiff, but rather that a one year gap existed.   Such indifference to discovery

20  responsibilities has, in Plaintiff's view, all too frequently characterized the responses

21  of Defendants.

22       In its Separate Statement below, Nelson & Kennard attempts to excuse its

23  failure to provide a full set of recordings commencing in July of 2010 when

24  Defendants first began targeting Plaintiff with their wrongful practices by claiming

25  that, under applicable statutes of limitation, Plaintiff's claims under the FDCPA and

26  the Rosenthal Acts can reach no further back in time than January 23, 2012, and no

27  further than January 23, 2011 under Plaintiff's tort claims.

28       Nelson & Kennard is wrong on both counts.  Plaintiff's Complaint alleges that

7

LEGAL02/34273698v2

1   defendants' wrongs were a continuing pattern and course of conduct since the
2   inception.   Such allegations void Nelson & Kennard's statute of limitations excuse
3   because the one year statute of limitations in the FDCPA and the Rosenthal Act are
4   both subject to the continuing violation doctrine – whereby the action is timely if filed
5   within one year of the most recent date of wrongdoing.   *Joseph v. JJ MacIntyre*
6   *Companies, LLC*  281 F. Supp. 2d 1156, 1160-62 (N.D. Calif. 2003); *Komarova v.*
7   *National Credit Acceptance, Inc.,* 175 Cal. App. 4th 324, 343-45 (2009).   That test is
8   amply met by the allegations of the Complaint here.

9         Likewise on Plaintiff's claims for the wrongful infliction of emotional distress,
10   where the cause of action does not accrue, and the two year statute does not even
11   begin to run, "until the effect of a defendant's conduct results in plaintiff's *severe*
12   emotional distress." *Kiseskey v. Carpenter's Trust for So. California* 144 Cal. App.
13   3d 222, 232 (1983).   Here, Plaintiff alleges that occurred in January of 2012 when she
14   began seeing a doctor and contemplating suicide. Complaint, ¶¶ 35-37.   In short, the
15   statute of limitations provides no justification whatsoever for Nelson & Kennard to
16   refuse to produce the entire record of recordings with Plaintiff, extending back to
17   when their unlawful conduct began: July 10, 2010.

18         It is clear, however, from the statement that Nelson & Kennard has filed that
19   they have absolutely no intent of doing so.   Rather, Nelson & Kennard conditions a
20   full production of all recordings on Plaintiff being able to demonstrate to Nelson &
21   Kennard's satisfaction that "actionable recordings" exist "within the time period" –
22   whatever that means.   Yet, a Defendant has no authority to require a Plaintiff to make
23   *any* particular showing to that Defendant's satisfaction before discovery is
24   permissible.   Nelson & Kennard's objection to providing a full disclosure of all
25   recordings of telephone conversations with Plaintiff, commencing with their first
26   collection actions against her in July of 2010, is without merit.

27

28

JOINT STATUS REPORT

LEGAL02/34273698v2

**C.    Defendants' Redactions To the Initial Disclosure Documents**

The redactions made by Defense counsel to the "account notes" produced to Plaintiff on July 15th appear in portions of the document that, at least from their context, appear to involve highly relevant communications with Plaintiff. To assure that Defendants' assertion of "attorney client and work product" privileges are not in fact wrongfully suppressing communications that should be produced, Plaintiff has requested that both Defendants clearly identify material redacted; identify, in each such instance, the basis for the redaction, and, where the redaction is based upon an assertion of privilege, provide to Plaintiff sufficient information to allow her to evaluate that claim and, if appropriate, challenge it.

Defendants have, so far, not agreed to do so, nor have they otherwise responded to Plaintiff's requests. Defendants' statements below in particular still do not unequivocally commit to explaining the redactions which it made, or to re-producing the documents redacted in their original condition – with material redacted expressly so marked.

**D.    Continue Dates**

Defendants propose that the existing Scheduling Order requires modification. In light of: (a) the delay with the Nelson & Kennard recordings; (b) continuing doubt over whether Nelson & Kennard will produce all recordings in their possession and whether or not, if it ever does, substantial disputes over the veracity of the process by which it supposedly "recovered" recordings will exist; (c) the continuing dispute over whether Defendants owe Plaintiff an explanation for significant redactions made to the few documents produced so far; (d) the surprise (to Plaintiff, at least) of disclosures of previously unknown conduct appearing for the first time in the July 15th document production; (e) unresolved issues relating to Plaintiff's original written discovery propounded on May 31st; and (e) Defendants' intent to oppose Plaintiff's request for leave to file a First Amended Complaint, Plaintiff has no doubt that some

9

scheduling modification will be necessary. With all that is presently unresolved, however, and the signals from Defendants of substantial discovery controversy to come, Plaintiff is at a loss to presently project the extent of modification that will be required.

## VII. CACH'S SEPARATE STATEMENT

### A. Request For Leave to Amend

Defendant CACH, LLC objects to the filing of the proposed First Amended Complaint on the grounds that the proposed amended pleading would be futile in that the new issues raised in the proposed First Amended Complaint are barred by the Rooker-Feldman doctrine, the statute of limitations and by case law.

### B. Redactions To the Initial Disclosure Documents

CACH, LLC has produced all of its account notes that describe any communications from Nelson & Kennard that reference and describe any communications or attempted communications with Plaintiff by Nelson & Kennard. CACH, LLC has redacted only non-relevant administrative functions created by its account notes system and activities following the filing of this lawsuit.

Counsel for CACH, LLC will review further the redactions to insure that no relevant material has been redacted from the account notes and will advise Plaintiff regarding the status of that further investigation.

### C. Continue Dates

In light of the unanticipated delays occasioned by the difficulty being experienced by Nelson & Kennard in retrieving the older recordings and in light of the proposed First Amended Complaint which raises entirely new claims against Defendants and which will need to be addressed legally and factually if Plaintiff is permitted to file the proposed First Amended Complaint, CACH, LLC believes that the Court should continue the discovery cutoff date and all subsequent dates for a period of 90 days.

JOINT STATUS REPORT

LEGAL02/34273698v2

# VIII  NELSON & KENNARD'S SEPARATE STATEMENT

## A.    Nelson & Kennard's Position on Recording Production

### 1.    Distinction between Archived and Unarchived Recordings

Nelson & Kennard ("N&K") has informed Plaintiff's counsel that the recordings that have been produced to date were readily available because they were not yet archived. The recordings prior to July 2011 were previously archived.

### 2.    Efforts to Restore Archived Recordings

N&K's Archived recordings are not stored in the same manner as the more recent unarchived recordings. The process to recover these recordings is as follows: (1) N&K examines its account notes and its call logs for the "number universe" of phone numbers associated with Plaintiff's account; (2) N&K then searches its archive for the days on which those numbers where called or it received a call from those numbers; (3) once the universe of "call days" is identified, N&K restores the call recordings for those "call days" from its archive; (4) Once the call days are restored, N&K then has to isolate the recordings relating to the Plaintiff's "number universe" from the other calls on that "call day"; (5) Finally, after the recording is "restored," N&K has to export the recording into a format that can actually be reviewed. N&K's estimate of "2 to 3" weeks was based on the estimate that (A) it does have the resources to dedicate an employee full-time to this work and (B) it takes approximately 45 minutes to restore a call day.

### 3.    Statute of Limitations

Plaintiff filed her Complaint on January 23, 2013. The statute of limitations for the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq.* ("FDCPA") and the Rosenthal Act, *Cal. Civ. Code* 1788 et seq. is one year. *See* 15 U.S.C. §1692k(d); § 1788.30(f). As recordings prior to January 23, 2012 are irrelevant to Plaintiff's FDCPA claims, N&K focused on getting Plaintiff the recordings that potentially relate to her claims within the statute as soon as possible. By providing recordings from July 2011 to the present, N&K has done so. Plaintiff has made no representation that

11

LEGAL02/34273698v2

1  she has reviewed the recordings she already has within the statute of limitations. She

2  has made no representation that these recordings support her FDCPA claim (the only

3  basis for this Court's jurisdiction).

4        Plaintiff's only other claims are for intentional infliction of emotional distress

5  ("IIED") and for negligent infliction of emotional distress ("NIED"). These claims

6  have a two year statute of limitations. *Cal. Civ. Proc.* § 335.1. In this regard, N&K is

7  working to obtain recordings from January 23, 2011 to July 2011 to supplement the

8  recordings Plaintiff already possesses from July 2011 onward. However, as stated

9  above, unless Plaintiff can produce actionable recordings within the one year statute

10  of limitations on her FDCPA claim, there is no jurisdiction for her remaining state law

11  claims.

12        To the extent Plaintiff is claiming the "continuing violations" doctrine, that

13  does not eliminate the requirement that Plaintiff find actionable recordings within the

14  time period. Once she has done so, under than theory Plaintiff can assert actionable

15  violations outside the time period. Plaintiff's assertion that she needs all the

16  recordings and then "Plaintiff needs to assess the accuracy of what has been

17  produced" before performing her review is at best a stalling tactic. Plaintiff refuses to

18  review the recordings within the statue to see if she has an actionable FDCPA claim,

19  instead choosing to reiterate requests for recordings over two years before she filed

20  her Complaint. Plaintiff's own cited authority implies that a threatening call in

21  violation of the FDCPA is a discrete act, not subject to the continuing violations

22  doctrine. *See Joseph*, 281 F. Supp. 2d 1156, 1161 (N.D. Cal. 2003)("Certain kinds of

23  acts prohibited by the FDCPA and the Rosenthal Act, e.g., a phone call at midnight, or

24  a threatening call to a consumer's employer, are discrete acts.") Again, N&K asserts

25  that Plaintiff should review the recordings she has while waiting for the other

26  recordings to see if she even has a viable claim. Plaintiff has N&K's account notes

27  and the relevant recordings for more than a year before she filed her FDCPA action.

28  She should start her review as soon as possible. *See Bhatt v. OWB REO LLC*, 2012

JOINT STATUS REPORT

1   U.S. Dist. LEXIS 181561 (C.D. Cal. Dec. 21, 2012)(dismissing FDCPA claim and

2   declining to exercise supplemental jurisdiction over a state claims).

3         Plaintiff's proposed Section 17200 Claim does not extend the one-year statute

4   of limitations on her FDCPA claim.  *See Silvas v. E\*Trade Mortg. Corp.*, 514 F.3d

5   1001, 1007 n.3 (9th Cir. 2008).

6   **B.**  **Request For Leave to Amend**

7         Defendant N&K objects to the filing of the proposed First Amended Complaint

8   ("FAC") on the grounds that the filing would be futile.  Plaintiff  has revised her

9   proposed FAC to remove the allegations relating to N&K's alleged lack of sufficient

10  evidence to file the collection action from her FDCPA/Rosenthal Act claims.

11  However, these allegations are still referenced in her proposed Secton 17200 Claim.

12  In this regard, Plaintiff proposed's FAC either seeks to revisit the state court

13  judgment, which is barred by *Rooker-Feldman*, or seeks to impose state statutory

14  liability for litigation conduct, which N&K asserts is barred by the litigation privilege

15  (*See Cal. Civ. Code* § 47(b); *Rubin v. Green*, 4 Cal. 4th 1187, 1201 (1993)(litigation

16  privilege applies to Section 17200 claims) and the *Noerr-Pennington* doctrine.

17  **C.**  **Redactions To the Initial Disclosure Documents**

18        The redactions in the account notes related to strategy in pursuing N&K's

19  collection complaint against Plaintiff.  Counsel for N&K will review the redactions

20  with N&K about providing further detail.  Again, as stated above, these redactions are

21  not material to Plaintiff's review of the actionable recordings already in her possession

22  that are within the FDCPA/Rosenthal Act statute of limitations.  As Plaintiff's

23  FDCPA claims are based on assertions N&K made to her over the phone, these

24  recordings should be the focus of her analysis.

25

26

27

28

LEGAL02/34273698v2

1

**D.      Continue Dates**

2       N&K agrees with CACH's proposal to continue the current discovery cut-off.

3

4

5

6      Dated: July 19, 2013                      DAVID J. KAMINSKI
                                                  STEPHEN WATKINS
7                                                 **CARLSON & MESSER LLP**

8                                                 /s/ David J. Kaminski
                                                  _____
9                                                 David J. Kaminski
                                                  Attorneys for Defendants
10                                                Nelson & Kennard and Gytana Castro

11

12     Dated: July 19, 2013                      TIMOTHY P. JOHNSON
                                                  **LAW OFFICES OF TIMOTHY P.**
13                                                **JOHNSON**

14                                                /s/ Timothy Johnson
                                                  _____
15                                                Timothy P. Johnson
                                                  Attorney for Defendant
16                                                CACH, LLC

17     Dated: July 19, 2013                      WARD L. BENSHOOF
                                                  ANDREA S. WARREN
18                                                **ALSTON & BIRD LLP**

19                                                /s/ Andrea S. Warren
                                                  _____
20                                                Andrea S. Warren
                                                  Attorneys for Plaintiff
21                                                INGRID CASTILLO

22

23

24

25

26

27

28

JOINT STATUS REPORT

LEGAL02/34273698v2